UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DAVID DeCAPUA, individually and on     :
behalf of all others similarly situated     :
    :
v.     :     C.A. No. 18-00590-WES
    :
METROPOLITAN PROPERTY AND     :
CASUALTY INSURANCE COMPANY     :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Plaintiff, on behalf of a putative class, alleges that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), "[b]y using an automated telephone dialing system ['ATDS'] to send thousands of automated telemarketing text messages without first obtaining the prior express written consent of recipients…." (ECF No. 1 at ¶ 4). Defendant moves to dismiss the Class Action Complaint pursuant to Rule 12(b)(6), and, alternatively, to stay proceedings pending forthcoming guidance on the definition of an ATDS from the Federal Communications Commission ("FCC"). (ECF No. 11). Plaintiff objects. (ECF No. 13). A hearing was held on September 12, 2019. For the following reasons, I recommend that Defendant's Motion to Dismiss be GRANTED.

### Introduction

As recently observed by District Judge Saylor, "the TCPA is an unusually confusing statute." Gonzalez v. Hosopo Corp., No. 18-10072-FDS, 2019 WL 1533295 at *6 (D. Mass. April 9, 2019). It was enacted in 1991 and makes it unlawful "to make any call[1] (other than a call made

---

[1] It is undisputed that a text message to a cellular telephone is a covered "call" under the TCPA. Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 667 (2016).

for emergency purposes or made with the prior express consent of the called party) using any [ATDS]…to any telephone number assigned to a…cellular telephone service…unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A). An ATDS is defined as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. at § 227(a). Simply stated, Defendant's Motion requires the Court to examine the issue of whether Plaintiff has plausibly alleged that Defendant used an ATDS in violation of the TCPA. Although simply stated, the issue is far from simple and is currently the subject of (1) a Circuit split;[2] (2) disagreement among Courts about the scope of a 2018 D.C. Circuit decision invalidating FCC guidance;[3] and (3) ongoing FCC proceedings to issue further guidance on the interpretation of the TCPA and the term ATDS.

After wading through the parties' thorough briefing and arguments, I conclude that Defendant's spam marketing texts at issue here violated the spirit but not the letter of the TCPA.

**Standard of Review**

Under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, see Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994); taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994).

---

[2] Compare Marks v. Crunch San Diego, LLP, 904 F.3d 1041 (9th Cir. 2018) with Dominguez v. Yahoo, Inc., 894 F.3d 116 (3rd Cir. 2018).

[3] See ACA Int'l v. FCC, 885 F.3d 687 (D.C. Cir. 2018).

While a plaintiff need not plead factual allegations in great detail, the allegations must be sufficiently precise to raise a right to relief beyond mere speculation. See Bell Atl. Corp. v.Twombly, 550 U.S. 544 (2007) (abrogating the "no set of facts" rule of Conley v. Gibson, 355 U.S. 41, 44-45 (1957)). "The complaint must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss." Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 559). See also Ashcroft v. Iqbal, 556 U.S. 662, 679 ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"). The Court of Appeals has cautioned that the "plausibility" requirement is not akin to a "standard of likely success on the merits," but instead, "the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010).

**Discussion**

This case centers on Defendant's use of the "EZ Texting" system. Plaintiff alleges that EZ Texting is an ATDS and was used by Defendant to send thousands of spam texts in violation of the TCPA. He contends that Defendant's system "stores numbers generated randomly or sequentially using basic features of Microsoft Excel, a common software program used, among other things, to store data and interact with external platforms – like EZ Texting." (ECF No. 13-1 at p. 23). Defendant disputes that EZ Texting meets the ATDS definitions as a matter of law and argues that EZ Texting's ability to interact with Microsoft Excel does not give it the "capacity to store or produce telephone numbers to be called, using a random or sequential number generator." See 47 U.S.C. § 227(a)(1). It argues that the fact Microsoft Excel can generate random or sequential numbers to be uploaded to EZ Texting does not make EZ Texting an ATDS.

After thoroughly reviewing the parties' arguments and the relevant case law, I elect to follow the reasoning of two District Court decisions that have applied the ATDS definition to the EZ Texting system at issue here.[4]  See Duran v. La Boom Disco, 369 F. Supp. 3d 476 (E.D.N.Y. 2019); and Ramos v. Hopele of Fort Lauderdale, 334 F. Supp. 3d 1262 (S.D. Fla. 2018).  Although both were decided on summary judgment records, Plaintiff filed a highly-detailed Complaint in this action that permits this Court to reach the same conclusions applying Rule 12(b)(6).  Plaintiff's detailed factual allegations about the operation of the EZ Texting system effectively mirror, in all material respects, the undisputed facts relied upon by the Duran and Ramos Courts.

First, both Courts wrestled with the scope and applicability of the D.C. Circuit's decision in ACA Int'l v. FCC, 885 F.3d 687 (D.C. Cir. 2018).  In ACA, the D.C. Circuit invalidated, as unreasoned decision making, a 2015 FCC Order ruling that an ATDS need only have the future or potential "capacity" to dial random or sequential numbers, rather than a present ability to do so. Ramos, 334 F. Supp. 3d at 1270-1271.

Both the Ramos and Duran Courts concluded that the ACA decision was binding precedent[5] and did not invalidate the pre-2015 FCC guidance on the definition of an ATDS.  Their respective conclusions are well-reasoned and adopted herein.  My independent review of the ACA decision and recent case law interpreting it affirms this conclusion.  Although ACA concluded that the 2015 FCC Order conflicted in certain respects with prior FCC rulings, it did not expressly or implicitly invalidate any of those prior ATDS rulings.  See, e.g., Jiminez v. Credit One Bank, N.A.,

---

[4]    Plaintiff has not identified any court decisions directly interpreting the EZ Texting system in the manner he advocates.  In addition, despite Defendant's heavy reliance on Ramos in its initial brief (ECF No. 11-1), Plaintiff failed to discuss or even cite the Ramos decision in his brief.  (ECF No. 13-1 at p. 5).

[5]    Plaintiff does not argue that ACA is not binding on this Court, and, in fact, advocates for a narrow reading of its holding consistent with Ramos and Duran.

377 F. Supp. 3d 324, 333 (S.D.N.Y. 2019). It simply recognized an inconsistency and that such inconsistency invalidated the 2015 Order. Id.

In Ramos, the Court concluded that an ATDS, as interpreted by the FCC's pre-2015 Orders, is "any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists" and, thus, "the primary consideration…is whether human intervention is required at the point in time at which the number is dialed." Ramos, 334 F. Supp. 3d at 1273 (internal citations omitted). Similarly, in Duran, the Court interpreted the pre-2015 FCC Orders as "holding that equipment can meet the definition of an autodialer if it pulls from a list of numbers, so long as the equipment also has the capacity to dial those numbers without human intervention." 369 F. Supp. 3d at 489. In the end, both Courts held that the EZ Texting system was not an ATDS because it could not send the spam texts in issue without human intervention.[6]

A comparison of the undisputed facts in Ramos/Duran about the operation of the EZ Texting system with the detailed facts alleged in Plaintiff's Complaint necessarily leads to the conclusion that these three cases are factually indistinguishable as a practical matter. Also, since I find the reasoning of the Ramos and Duran Courts to be persuasive, I elect to follow and adopt it herein.

As previously stated, the issue here is whether Plaintiff has plausibly alleged that the EZ Texting system is an ATDS, an automated telephone dialing system. In other words, a system with the capacity to generate numbers to be called randomly or sequentially without human intervention. See Legg v. Voice Media Group, Inc., 20 F. Supp. 3d 1370, 1372 (S.D. Fla. 2014).

_____

[6]  Ramos ruled that the EZ Texting system could not send texts without a "significant amount of human involvement," 334 F. Supp. 3d at 1273-1276; while Duran ruled that it operated with "too much human involvement." 369 F. Supp. 3d at 492.

The EZ Texting system as described in Plaintiff's Complaint fails to meet this definition. It requires human intervention to upload and store a list of phone numbers from another source such as Microsoft Excel. (ECF No.1 at ¶¶ 48-52). It also requires human intervention to select the groups of stored phone numbers to be called and then to type the message that will be sent and select the time of delivery. Id. at ¶ 52. Finally, it requires human intervention to review the information submitted and hit a send button. Id. at ¶¶ 52-53. In other words, the "EZ Texting system cannot send a text without a person physically inputting numbers, drafting a message, selecting recipients, choosing a date and time to send the message, and manually hitting a 'send' button." Ramos, 334 F. Supp. 3d at 1275.

**Conclusion**

For the foregoing reasons, I recommend that Defendant's Motion to Dismiss (ECF No. 11) be GRANTED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/  Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 30, 2019