## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DAVID DECAPUA, individually and on behalf of all others similarly situated, | **Case No. 1:18-cv-00590-WES-LDA** |
| Plaintiff, | |
| v. | |
| METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, | |
| Defendant, | |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

2128293.2

## TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ................................................... 1

INTRODUCTION ................................................................................................... 1

SUMMARY OF THE SETTLEMENT .................................................................... 2

ARGUMENT .......................................................................................................... 3

I.      THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE, AND
        ADEQUATE UNDER RULE 23(e)(2) ............................................................. 3

        A.      The Class Representatives and Class Counsel have Adequately Represented
                the Class. ..................................................................................................... 5

        B.      The settlement was negotiated at arm's-length by vigorous advocates, and
                there has been no fraud or collusion. ........................................................ 6

        C.      The Settlement Provides Substantial Relief for the Class ........................ 7

                1.      Diverse and substantial legal and factual risks weigh in favor of
                        settlement. ..................................................................................... 8

                2.      The monetary terms of this proposed settlement fall within the
                        range of prior TCPA class action settlements. ............................. 9

                3.      The method of providing relief is effective and treats all members
                        of the Class fairly. ..................................................................... 10

                4.      The proposed award of attorneys' fees is fair and reasonable. ............ 10

II.     THE SETTLEMENT SATISFIES RULE 23. ................................................ 11

        A.      The members of the Class are so numerous that joinder of all of them is
                impracticable. ........................................................................................... 11

        B.      Questions of law and fact are common to the members of the Class. .............. 12

        C.      Plaintiff's claims are typical of the claims of the members of the Class he
                represents. ................................................................................................. 12

        D.      The questions of law and fact common to the members of the Class
                predominate over any questions potentially affecting only individual members. 13

        E.      A class action is superior to other available methods for the fair and efficient
                adjudication of the claims of Plaintiff and the Class. .............................. 13

III.    The parties' notice plan satisfies the requirements of Rule 23 and due process
        requirements. .......................................................................................................... 14

CONCLUSION ....................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allan v. Pa. Higher Educ. Assistance Agency*,
　　968 F.3d 567 (6th Cir. 2020) ................................................................ 1

*Amchem Prods. v. Windsor*,
　　521 U.S. 591 (1997) .......................................................... 3, 13, 14

*Baptista v. Mut. of Omaha Ins. Co.*,
　　859 F. Supp. 2d 236 (D.R.I. 2012) ...................................................... 6

*Couser v. Comenity Bank*,
　　125 F. Supp. 3d 1034 (S.D. Cal. 2015) ................................................ 9

*Curtis v. Scholarship Storage, Inc.*,
　　Case No. 2:14-cv-303, 2016 WL 3072247 (D. Me. May 31, 2016) ...................... 11

*D'Amato v. Deutsche Bank*,
　　236 F.3d 78 (2d Cir. 2001) .............................................................. 7

*Del Sesto v. Prospect CharterCARE, LLC*,
　　Case No. 18-328, 2019 WL 5067200 (D.R.I. Oct. 9, 2019) ........................... 3, 4

*Dominguez v. Yahoo, Inc.*,
　　894 F.3d 116 (3d Cir. 2018) ............................................................ 1

*Duguid v. Facebook, Inc.*,
　　141 S. Ct. 193 (Mem.) (July 9, 2020) (granting certiorari) ........................ 1

*Duran v. La Boom Disco, Inc.*,
　　955 F.3d 279 (2d Cir. 2020) , *petition for certiorari pending*, No. 20-308 (Sept. 3,
　　2020) .................................................................................. 1

*Eisen v. Carlisle & Jacquelin*,
　　417 U.S. 156 (1974) ................................................................... 14

*Estrada v. iYogi, Inc.*,
　　No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) .................... 9

*Garcia-Rubiera v. Calderon*,
　　570 F.3d 443 (1st Cir. 2009) .......................................................... 11

*Glasser v. Hilton Grand Vacations Co.*,
　　948 F.3d 1301 (11th Cir. 2020) ......................................................... 1

*Grady v. de Ville Motor Hotel, Inc.*,
　　415 F.2d 449 (10th Cir. 1969) .......................................................... 9

*Halliburton Co. v. Erica P. John Fund, Inc.*,
　　573 U.S. 258 (2013) ................................................................... 13

*Hanlon v. Chrysler Corp.*,
　　150 F.3d 1011 (9th Cir. 1998) .......................................................... 9

2128293.2

*In re AOL Time Warner ERISA Litig.*,
    Case No. 02-cv-8853, 2006 WL 2789862, at *7 (S.D.N.Y. Sept. 27, 2006) ............................ 6

*In re Checking Account Overdraft Litig.*,
    275 F.R.D. 654 (S.D. Fla. 2011) ............................................................................................ 7

*In re LandAmerica 1031 Exch. Servs. Inc.*,
    MDL No. 2054 WL 13124593 (D.S.C. Jul. 12, 2012) ............................................................ 15

*In re Loestrin 24 FE Antitrust Litig.*,
    No. 1:13-md-2472, 2020 WL 4035125 (D.R.I. July 17, 2020) ........................................ 11, 12

*In re Nexium Antitrust Litig.*,
    777 F.3d 9 (1st Cir. 2015) ..................................................................................................... 13

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    588 F.3d 24 (1st Cir. 2009) ..................................................................................................... 6

*In re Relafen Antitrust Litig.*,
    218 F.R.D. 337 (D. Mass. 2003) ............................................................................................ 11

*In re Toys "R" Us Antitrust Litig.*,
    191 F.R.D. 347 (E.D.N.Y. 2000) ............................................................................................ 7

*Johnson v. Brennan*,
    No. 10-4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011) ................................................... 7

*Marcoux v. Susan J. Szwed, P.A.*,
    Case No. 2:15-cv-093, 2017 WL 679150 (D. Me. Feb. 21, 2017) ......................................... 8

*Markos v. Wells Fargo Bank, N.A.*,
    No. 1:15-cv-01156-LMM, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017)................................... 9

*Marks v. Crunch San Diego, LLC*,
    904 F.3d 1041 (9th Cir. 2018)................................................................................................. 1

*Medoff v. CVS Caremark Corp.*,
    Case No. 09-cv-554-JNL, 2016 WL 632238 (D.R.I. Feb. 17, 2016)................................... 5, 8

*Milliron v. T-Mobile USA, Inc.*,
    2009 WL 3345762 (D.N.J. Sept. 14, 2009) ............................................................................ 7

*Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l*,
    Case No. 05-cv-12024, 2010 WL 11693979 (D. Mass. Mar. 12, 2010)................................ 11

*P.R. Dairy Farmers Ass'n v. Pagan*,
    748 F.3d 13, 20 (1st Cir. 2014) .............................................................................................. 5

*Parent/Professional Advocacy League v. City of Springfield*,
    934 F.3d 13 (1st Cir. 2019) .................................................................................................... 12

*Pizzarelli v. Cadillac Lounge, LLC*,
    Case No. 15-cv-254, 2018 WL 2971114 (D.R.I. Apr. 13, 2018)........................................ 6, 12

*Rapuano v. Trs. of Dartmouth Coll.*,
    334 F.R.D. 637 (D.N.H. 2020)........................................................................................... 4, 12

iv

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
No. 08-482, 2010 WL 2486346 (C.D. Cal. June 15, 2010) ..................................... 7

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) ............................................................................................. 13

*Wal-Mart Stores, Inc., v. Dukes*,
564 U.S. 538 (2011) ................................................................................................. 12

*Wright v. Nationstar Mortg. LLC*,
No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ................................ 8

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................. 11, 12

Fed. R. Civ. P. 23(a)(1) ............................................................................................... 11

Fed. R. Civ. P. 23(a)(2) ............................................................................................... 12

Fed. R. Civ. P. 23(a)(3) ............................................................................................... 12

Fed. R. Civ. P. 23(a)(4) ................................................................................................. 6

Fed. R. Civ. P. 23(b)(3) ......................................................................................... 13, 14

Fed. R. Civ. P. 23(b)(3)(D) .......................................................................................... 14

Fed. R. Civ. P. 23(c)(2)(A) .......................................................................................... 15

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................... 14, 15

Fed. R. Civ. P. 23(c)(2)(C)(iii) .................................................................................... 10

Fed. R. Civ. P. 23(e)(1) ............................................................................................... 14

Fed. R. Civ. P. 23(e)(1)(A) ............................................................................................ 4

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................................... 4, 5

Fed. R. Civ. P. 23(e)(2) .......................................................................................... 3, 4, 5

Fed. R. Civ. P. 23(e)(2)(C)(ii) ..................................................................................... 10

**Other Authorities**

7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1764
(rev. 4th ed. 2018) .................................................................................................. 12

Alba Conte & Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002) ........... 4

Manual for Complex Litigation (4th ed. 2004) ........................................................ 4, 5

McLaughlin on Class Actions (8th ed. 2011) ............................................................... 6

2128293.2

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Local Rule Cv 7(c), Plaintiff does not request oral argument on this motion.

## INTRODUCTION

Congress passed the Telephone Consumer Protection Act ("TCPA") to restrict the use of automatic telephone dialing systems and protect consumers from excessive telemarketing calls. But the TCPA left ambiguous the definition of an "automatic telephone dialing system" ("ATDS"), and courts facing that question have come to differing conclusions.[1]  Indeed, the United States Supreme Court accepted for review a case that might clarify this issue.  *See Duguid v. Facebook, Inc.,* 141 S. Ct. 193 (Mem.) (July 9, 2020) (granting certiorari), argued earlier this term.

In this matter, the meaning of an "automatic telephone dialing system" was hotly contested.  On March 19, 2020, this Court held, while noting that the statute "lacks precision, muddying its application," that the text messages sent to Plaintiff David DeCapua using an EZ Texting system were *not* sent by an ATDS.  Dkt. No. 38, at 1-2.  Plaintiff appealed this Court's determination.  While that appeal was pending, the Second Circuit held that the exact same EZ Texting system was an ATDS.  *See Duran,* 955 F.3d at 290.

In the midst of this legal uncertainty, the parties mediated the case.  The mediation produced a negotiated resolution, with each party recognizing the respective risks they faced on the ATDS question.  Under this framework, Defendant Metropolitan Property and Casualty Insurance Company ("MetLife") agreed to create a settlement fund of $850,000 that would be

---

[1] *See also Allan v. Pa. Higher Educ. Assistance Agency*, 968 F.3d 567 (6th Cir. 2020); *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 283-84 (2d Cir. 2020), *petition for certiorari pending*, No. 20-308 (Sept. 3, 2020);  *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052-53 (9th Cir. 2018); *with Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 464, 469 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1310 (11th Cir. 2020); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119-21 (3d Cir. 2018).

used to make payments to the 6,950 persons who, like Plaintiff, received text messages sent on behalf of former MetLife employee Rick Lee, as well as pay for notice and administration costs and attorneys' fees and incentive awards as approved by the Court.

Pursuant to the parties' agreement, Plaintiff now respectfully requests that this Court: (1) conditionally approve the parties' settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (2) appoint Plaintiff as the class representative, (3) appoint Plaintiff's counsel as class counsel, (4) approve the proposed notice program as the best practicable under the circumstances that satisfies due process and Rule 23, (5) set a date for a final approval hearing, and (6) set deadlines for members of the settlement class to submit claims for compensation, and to object to or exclude themselves from the settlement.

MetLife does not oppose this motion.

## SUMMARY OF THE SETTLEMENT[2]

The settlement calls for MetLife to create a cash settlement fund of $850,000, *see* Exhibit 1, Settlement Agreement and Release ("Agr.") ¶ 2.42, to make payments to resolve the claims of "all 6,950 persons within the United States who may have received a text message on or after May 1, 2018 sent by or on behalf of MetLife former employee Rick Lee."  Agr. ¶ 2.40. Settlement Class Members will be sent notice by the settlement administrator[3] by U.S. mail and via a designated settlement website. *Id.* ¶¶ 7.02, 7.03.

*All* Class Members who do not timely exclude themselves from the settlement will receive a pro rata share of the remainder of the Settlement Fund, after payments of appropriate settlement costs approved by the Court, which include the costs of notice and claims

---

[2] Any undefined capitalized terms shall have the meaning attributed to them in the parties' Settlement Agreement, which is being submitted contemporaneously herewith.
[3] Following a competitive bidding process, the parties have selected JND Legal Administration as the claims administrator. *Id.* at ¶ 2.39.

administration, attorneys' fees and expenses that the Court may approve, and any incentive

award to the Class Representative that this Court may approve.  *Id.* ¶ 4.02(a)-(b).  Importantly,

members of the Class will not be required to engage in *any* sort of claims process, and no part of

the Settlement Fund will revert to MetLife.  This represents the most straightforward and direct

way to provide compensation to members of the Settlement Class.

Class Members who do not exclude themselves from the Settlement will only release

claims specifically tailored to the practices that give rise to this matter. In particular, the release

is limited to the Class Members identified during the applicable class period and is limited to

claims arising from or relating to text messages of the sort that gave rise to this Action.

*Id.* ¶ 12.02.

## ARGUMENT

### I.     THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23(e)(2)

"A Court may approve a settlement in a class action only upon a finding that the

settlement is 'fair, reasonable, and adequate.'"  *Del Sesto v. Prospect CharterCARE, LLC,* Case

No. 18-328, 2019 WL 5067200, at *3 (D.R.I. Oct. 9, 2019) (citing Fed. R. Civ. P. 23(e)(2)).

"The inquiry appropriate under Rule 23(e) . . . protects unnamed class members from unjust or

unfair settlements affecting their rights when the representatives become fainthearted before the

action is adjudicated or are able to secure satisfaction of their individual claims by a

compromise."  *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997) (internal quotation marks

and citations omitted).

Rule 23 – and particularly the portions dealing with class settlements – was amended in

December, 2018. The first step in the amended process is a preliminary fairness determination.

Specifically, the proposed terms of the settlement are submitted to the district court, along with

"information sufficient to enable [the court] to determine whether to give notice of the proposal

to the class." Fed. R. Civ. P. 23(e)(1)(A) (2018).  This allows the Court make "a preliminary

determination on the fairness, reasonableness, and adequacy of the settlement terms[.]" Manual

for Complex Litig. § 21.632 (4th ed. 2004); *see also Del Sesto v. Prospect CharterCARE, LLC,*

Case No. 18-328, 2019 WL 2394251, at *1 (D.R.I. June 6, 2019) ("The first step is merely to

'ascertain whether notice of the proposed settlement should be sent to the class . . . . .'" (quoting

4 William B. Rubenstein, Newberg on Class Actions § 13:13 (5th ed. 2018)).

 The new rule calls for front-loaded scrutiny of a proposed settlement so that any issues

are identified *before* notice goes out to the class.  "Rule 23(e)(1)(B) now provides that, in order

to preliminarily approve the settlement, the court must find that it 'will likely be able to' certify

the class for the purposes of settlement and find that the settlement is fair, reasonable, and

adequate." *Rapuano v. Trs. of Dartmouth Coll.,* 334 F.R.D. 637, 643 (D.N.H. 2020) (quoting

Fed. R. Civ. P. 23(e)(1)(B)).  To that end, where, as here, the proposed settlement would bind

Class Members it may only be approved after a final hearing and a finding that it is fair,

reasonable, and adequate, based on the following factors:

 (A) the class representatives and class counsel have adequately represented the class;

 (B) the proposal was negotiated at arm's length;

 (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

 (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  If the court preliminarily finds that the settlement is fair, adequate, and

reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement,

4

and date of the final fairness hearing." Manual for Complex Litig. § 21.632; Fed. R. Civ. P. 23(e)(1)(B) (2018).

The next step in the process is a final fairness hearing.  Fed. R. Civ. P. 23(e)(2) (2018); *also* Manual for Complex Litig. § 21.633-34.

As explained below, consideration of these factors supports preliminary approval of the Settlement and issuing notice.

**A.** **The Class Representatives and Class Counsel have Adequately Represented the Class.**

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise.  In evaluating potential settlements, "[t]he court performs this analysis in the shadow of the 'strong public policy in favor of settlements,' particularly in class action litigation."  *Medoff v. CVS Caremark Corp.,* Case No. 09-cv-554-JNL, 2016 WL 632238, at *5 (D.R.I. Feb. 17, 2016) (quoting *P.R. Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13, 20 (1st Cir. 2014)).  This matter is no exception.

Here, while the case is settling at a relatively early stage of the proceedings, the parties are fully informed of the relevant facts in the case.  Critically, the facts of this case are simple and not in dispute—MetLife former employee Rick Lee caused text messages to be sent to 6,950 individuals using the EZ Texting System.  Unlike many cases, the dispute in this case, as well as the basis of the settlement, is largely tied to the legal significance of those undisputed factual allegations.  Thus, notwithstanding the fact that no formal discovery had occurred in this case, all parties entered into negotiations with full knowledge of all relevant information.  "The relevant inquiry . . . is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.  The parties need not have engaged in extensive discovery as long as they have engaged in sufficient

2128293.2

investigation of the facts to enable the Court to intelligently make . . . an appraisal of the

settlement." *In re AOL Time Warner ERISA Litig.,* Case No. 02-cv-8853, 2006 WL 2789862, at

*7 (S.D.N.Y. Sept. 27, 2006) (internal quotation marks and citations omitted); *see also Baptista*

*v. Mut. of Omaha Ins. Co.,* 859 F. Supp. 2d 236, 241 (D.R.I. 2012) (finding that the parties had

sufficient information to settle the case intelligently, notwithstanding that "[d]iscovery in this

case appears to have been minimal and primarily informal")

In addition, a plaintiff and counsel are adequate if "[counsel] fairly and adequately

represent the interests of the class." Fed. R. Civ. P. 23(a)(4). "[T]he adequacy-of-representation

requirement . . . raises concerns about the competency of class counsel and conflicts of interest."

*Pizzarelli v. Cadillac Lounge, LLC*, Case No. 15-cv-254, 2018 WL 2971114, at *9 (D.R.I. Apr.

13, 2018) (internal quotation marks omitted).

Here, Plaintiff's claims are aligned with the claims of the other Class Members. He thus

had every incentive to vigorously pursue the claims of the class, as he has done to date by

remaining involved in this matter since its inception, including in the settlement process. In

addition, Plaintiff retained the services of law firms with extensive experience in litigating

consumer cases, TCPA actions in particular, as well as with class actions. Plaintiff's counsel

believe that the parties' settlement is fair, reasonable, and adequate, and in the best interests of

the members of the Class. Plaintiff's counsel also believes that the benefits of the parties'

settlement far outweigh the delay and considerable risk of proceeding to trial.

**B.**    **The settlement was negotiated at arm's-length by vigorous advocates, and there has been no fraud or collusion.**

"A settlement reached after a supervised mediation receives a presumption of

reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed.

2011); *see also In re Pharm. Indus. Average Wholesale Price Litig.,* 588 F.3d 24, 32-33 (1st Cir.

2009) ("[i]f the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable."); *In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("Most significantly, the settlements were reached only after arduous settlement discussions conducted in a good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator[.]")[4]

Here, the Settlement Agreement resulted from good faith, arm's-length settlement negotiations, culminating in a mediation session with Honorable Wayne Andersen (Ret.) of JAMS. *See* Agr. ¶ 1.03. Plaintiff and MetLife submitted detailed mediation submissions to Judge Andersen setting forth their respective views as to the strengths of their cases. *Id.* Accordingly, it is clear that the parties negotiated their settlement at arm's-length, absent any fraud or collusion. *See Baptista,* 859 F. Supp. 2d at 241 ("In light of these facts . . . the Court concludes that this is a good settlement which was achieved at an arm's length negotiation with the services of a mediator.")  Moreover, Judge Andersen has mediated thousands of cases, including several TCPA class action cases similar to this one.

### C.    The Settlement Provides Substantial Relief for the Class

Plaintiff's and his counsel's zealous advocacy, the arm's-length nature of the Settlement,

---

[4] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) ("The Court finds that the Settlement was reached in the absence of collusion, is the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator[.]"); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

the relief afforded under the Agreement, and the equitable treatment to the Class all support a

finding that the Settlement is fair, reasonable, and adequate. As further detailed below, the

Settlement should be preliminarily approved with an order directing that notice be provided to

the Class.

### 1. Diverse and substantial legal and factual risks weigh in favor of settlement.

The Court must also consider the likelihood and extent of any recovery from the

defendants absent settlement.  *See Medoff,* 2016 WL 632238, at *6 (finding that the proposed

settlement "reasonable in light of the class's potential recovery."); *see also Marcoux v. Susan J.*

*Szwed, P.A.,* Case No. 2:15-cv-093, 2017 WL 679150, at *2-3 (D. Me. Feb. 21, 2017) (approving

a settlement that provided a reasonable percentage of potential recovery in light of possible

impediments to obtaining that amount at trial).

With this in mind, Plaintiff understands that MetLife has a defense that would be case-

dispositive if it prevailed: that the system at issue that sent the text messages to Class Members

did not constitute an ATDS.  Indeed, this Court held as much, and dismissed Plaintiff's case.

Thus, while Plaintiff strongly believes in his claims and is optimistic about the outcome of the

*Duguid* case and other pending cases addressing the "human intervention" test in connection

with ATDS technology, the ability of Plaintiff to obtain monetary relief absent this settlement is

far from certain.  *See supra*, fn. 1; *see also Wright v. Nationstar Mortg. LLC*, No. 14 C 10457,

2016 WL 4505169, *10 (N.D. Ill. Aug. 29, 2016) (approving TCPA settlement where "Plaintiffs

would have faced uncertainty surrounding the definition of an 'automatic telephone dialing

system' had the case proceeded in litigation").  In that light, the proposed settlement represents

substantial value for Class Members, and represents a reasonable choice under the circumstances

over continuing to pursue claims in litigation.

## 2.   The monetary terms of this proposed settlement fall within the range of prior TCPA class action settlements.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)

Here, the parties agree to resolve this matter for a settlement fund of $850,000, which on the whole would amount to more than $70 for every Class Member, without any claims process needed after the requested attorneys' fees and the settlement administrator's cost are deducted from the fund. This figure compares extremely well with many other TCPA class action settlements that courts have approved. *See, e.g., Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members would receive an estimated $40); *Markos v. Wells Fargo Bank, N.A.,* No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"); *Couser v. Comenity Bank,* 125 F. Supp. 3d 1034, 1044-45 (S.D. Cal. 2015) (approving TCPA settlement in which class members received $13.75 each, noting that such a figure "appears to be on the low end of monetary recovery for TCPA class action settlements").

9

**3.     The method of providing relief is effective and treats all members of the Class fairly.**

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This settlement proposes the gold standard in class member relief: cash payments. Moreover, the allocation of the Settlement Fund among the Class Members is straightforward. Each member of the class that does not opt-out will receive a check equal to their *pro rata* share of the settlement award.  There is no claims process, Class Members do not have to produce any records or other documents, and there are no impediments to receiving compensation.  The settlement puts no barriers between Class Members and their compensation, compensation that is the ultimate purpose of the settlement.

**4.     The proposed award of attorneys' fees is fair and reasonable.**

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiff's counsel will seek an award one-third of the common fund of $850,000; that is, they will seek $283,333.33, plus their reasonable expenses. Agr. ¶ 5.01.

This amount falls squarely in line with many other approved class settlements in the First Circuit. *E.g., In re Loestrin 24 FE Antitrust Litig.,* Case No. 1:13-md-2472, 2020 WL 4035125,

2128293.2

at *5 (D.R.I. July 17, 2020) (approving an award of one-third of the value of the fund); *Curtis v. Scholarship Storage, Inc.*, Case No. 2:14-cv-303, 2016 WL 3072247, at *4 (D. Me. May 31, 2016) (approving a one-third fee and noting "Plaintiffs' counsel performed this work on a contingent fee basis, assuming the risk that there would be no recovery and therefore no compensation."); *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l,* Case No. 05-cv-12024, 2010 WL 11693979, at *4 (D. Mass. Mar. 12, 2010) (same). Plaintiff's counsel achieved an excellent result for the Class after undertaking substantial risk in prosecuting this action on a pure contingency basis.  Indeed, this Court dismissed the action in its entirety before the parties ultimately settled on appeal.  Plaintiff's counsel should be fairly compensated for litigating this matter effectively in the face of that risk.

Prior to final approval, Plaintiff's counsel will file a separate motion for their requested award of attorneys' fees and expenses, addressing in detail the facts and law supporting their fee request, and the anticipated fee request will likewise be stated in the Class Notice.

## II.     THE SETTLEMENT SATISFIES RULE 23.

### A.     The members of the Class are so numerous that joinder of all of them is impracticable.

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "While there is no strict minimum number of plaintiffs required to demonstrate impracticability, there is a general presumption that 'if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'"  *In re Loestrin 24 FE Antitrust Litig.,* Case No. 1:13-md-2472, 2019 WL 3214257, at *7 (D.R.I. July 2, 2019) (quoting *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009)); *see also In re Relafen Antitrust Litig.,* 218 F.R.D. 337, 342 (D. Mass. 2003) (finding numerosity with a proposed settlement class of at least sixty members).

Here, there are 6,950 Class Members. *See* Agr. ¶ 2.40. Joinder, therefore, is impracticable, and the Class thus easily satisfies Rule 23's numerosity requirement.

**B.     Questions of law and fact are common to the members of the Class.**

Rule 23(a) also requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "A question is common if it is 'capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Parent/Professional Advocacy League v. City of Springfield,* 934 F.3d 13, 28 (1st Cir. 2019) (quoting *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 538, 350 (2011) (internal quotation marks omitted)).  "Plaintiffs need only articulate a single common question to meet the commonality requirement."  *Rapuano,* 334 F.R.D. at 648 (citing *Dukes*, 564 U.S. at 359).

Here, the claims of the members of the Class stem from the same factual circumstances—telemarketing text messages sent by a single MetLife employee to potential customers, in alleged violation of the TCPA.  Plaintiff asserts that common questions, therefore, include whether the messages violated the TCPA.  Consequently, the class satisfies Rule 23's commonality requirement.

**C.     Plaintiff's claims are typical of the claims of the members of the Class he represents.**

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of the class. Fed. R. Civ. P. 23(a)(3).  "Typicality often overlaps with the commonality requirement."  *Pizzarelli*, 2018 WL 2971114, at *8.  "[M]any courts have found typicality if the claims or defenses of the representatives and the members of the Class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory."  *In re Loestrin,* 2019 WL 3214257, at *11 (quoting 7A Charles Alan Wright & Arthur R. Miller,

12

Federal Practice and Procedure § 1764 (4th ed. 2018) (internal quotation marks omitted)).

Plaintiff received a text message from a single MetLife employee.  Plaintiff brings a single legal claim—violation of the TCPA—based on that singular factual predicate.  Plaintiff thus asserts that the typicality requirement is met here.

> **D.**   **The questions of law and fact common to the members of the Class predominate over any questions potentially affecting only individual members.**

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623.  Predominance is "readily met" in certain consumer cases.  *See id.* at 625.  The touchstone for predominance analysis is efficiency.  It is not necessary that all questions of law or fact be common; only some questions must be common, and they must predominate over individual questions.  *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("The predominance inquiry asks whether common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.") (citation omitted).  "Rather, the question is whether there is 'reason to think that [individualized] questions will overwhelm common ones and render class certification inappropriate . . . .'" *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2013)).

Here, the central, and potentially only, legal issue is whether the dialing system at issue in this case qualifies as an ATDS. Plaintiff asserts that this is sufficient to satisfy the predominance requirement, as there are few if any individualized questions to be determined.

> **E.**   **A class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the Class.**

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to

2128293.2

other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Because Plaintiff seeks to certify a class in the context of a settlement, this Court need not consider any possible management-related problems as it otherwise would. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

In any event, no individual member of the Class has an interest in controlling the prosecution of this action because Plaintiff's claims and the claims of the members of the Class are the same, and they are all relatively modest. Plaintiff asserts that alternatives to a class action are either no recourse for thousands of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice.

**III.    The parties' notice plan satisfies the requirements of Rule 23 and due process requirements.**

Under Rule 23(e), a court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice of a proposed settlement to class members must be the "best notice [] practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

14

2128293.2

As the *LandAmerica* Court explained:

> For a binding settlement, the Court must direct the Plaintiffs to give notice in a reasonable manner to all class members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e). Class members are entitled to know the terms of the agreement. Class members are entitled to a notice which clearly and concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Class members are also entitled to notice of the fees and costs being requested by class counsel and given an opportunity to object. Rule 23(h).

*In re LandAmerica 1031 Exch. Servs. Inc.,* MDL No. 2054, 2012 WL 13124593, at *7 (D.S.C. Jul. 12, 2012).

Here, the parties have agreed to a robust notice program involving direct postcard mail notice to Class Members and a dedicated settlement website to be administered by a well-regarded third-party claims administrator— JND—which has significant experience in the administration of consumer class actions, including TCPA cases.  As such, the notice plan complies with Rule 23 and due process because, *inter alia*, it informs Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process to object to, or to be excluded from, the class, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Plaintiff's request for an award of attorneys' fees and expenses; and (6) how to make inquiries and obtain additional information. Fed. R. Civ. P. 23(c)(2)(B)

In sum, the parties' notice plan ensures that Class Members' due process rights are amply protected, and it should be approved. Fed. R. Civ. P. 23(c)(2)(A).

15

## **CONCLUSION**

Plaintiff respectfully requests that this Court: (1) approve the parties' settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (2) appoint Plaintiff as the class representative, (3) appoint Plaintiff's counsel as class counsel, (4) approve the parties' proposed notice program, and confirm that it is the best practicable under the circumstances and that it satisfies due process and Rule 23, (5) set a date for a final approval hearing, (6) set deadlines for members of the settlement class to submit claims for compensation, and to object to or exclude themselves from the settlement, and (7) grant such further and other relief the Court deems reasonable and just.


Dated: February 8, 2021                    By:    */s/ Peter N. Wasylyk*

Peter N. Wasylyk (R.I. Bar # 3351)
LAW OFFICES OF PETER N. WASYLYK
1307 Chalkstone Avenue
Providence, Rhode Island 02908
Telephone: 401-831-7730
Facsimile: 401-861-6064
Email: pnwlaw@aol.com

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin*
Email:  jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson*
Email:  dhutchinson@lchb.com
Evan J. Ballan*
Email:  eballan@lchb.com
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

16

2128293.2

MEYER WILSON CO., LPA
Matthew R. Wilson*
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr.*
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

*Admitted Pro Hac Vice

*Attorneys for Plaintiff and the Proposed Class*

## Certificate of Service

I hereby certify that on February 8, 2021 I served the foregoing to all counsel in this matter via ECF notification:

/s/  *Daniel M. Hutchinson*

One of the Attorneys for Plaintiff and the Class

17

2128293.2