# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DAVID DECAPUA, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br><br>METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>　　　　　Defendant, | **Case No. 1:18-cv-00590-WES-LDA** |

# PLAINTIFF'S MOTION FOR
# ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD

## **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................................ 1

II.    BACKGROUND AND SETTLEMENT ............................................................................. 2

III.    LEGAL STANDARD FOR ATTORNEYS' FEE AWARDS IN A CLASS ACTION ............................................................................................................................. 4

IV.    ARGUMENT ....................................................................................................................... 5

    A.    Class Counsel's Requested Fee Award Is Reasonable. ........................................... 5

        1.    Class Counsel obtained excellent results for the class on a per-person basis. ................................................................................................... 6

        2.    Class Counsel are experienced attorneys who litigated the case efficiently. ..................................................................................................... 7

        3.    This was a complex case that was fully litigated prior to settlement .......... 8

        4.    The risk of non-payment in this case was real. ........................................... 9

        5.    Class Counsel Expended Significant Time on This Matter. ..................... 10

        6.    The requested fee reflects the fees awarded in many other settlements .................................................................................................. 11

        7.    Public policy supports Plaintiff's fee request. .......................................... 12

    B.    The Court Should Also Award Reasonable Reimbursement for Expenses. .......... 13

    C.    The Incentive Award to the Class Representative Should Be Approved. ............ 13

V.    CONCLUSION .................................................................................................................. 15

**Certificate of Service** ................................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act Litig.)*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ................................................................................ 7, 12, 14

*Baptista v. Mut. of Omaha Ins. Co.,* 859 F.3d 236, 242 (D.R.I. 2012)........................................... 4

*Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534 (S.D. Fla. 1988)...................................... 9

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980).............. 4

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015)............................................... 7

*Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) 6

*Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021) ......................................................................... 1

*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000).................................................... 9

*In re GM LLC Ignition Switch Litig.*, Case No. 14-md-2543, 2020 U.S.Dist. LEXIS 239312 (S.D.N.Y. Dec. 18, 2020)......................................................................................... 13

*In re Loestrin 24 Fe Antitrust Litig.,* Case No. 1:13-md-2472-WES-PAS, 2020 U.S.Dist. LEXIS 125746 (D.R.I. July 17, 2020) ........................................................................... passim

*In re Lupron Mktg. & Sales Practices Litig.*, Case No. 01-CV-10861, 2005 U.S.Dist. LEXIS 17456 (D. Mass. Aug. 17, 2005)................................................................................ 9, 12, 14

*In re Neurontin Mktg. & Sales Practices Litig.,* 58 F. Supp. 3d 167, 170 (D. Mass. 2014)..... 4, 11

*In re Solodyn Antitrust Litig.*, Case No. 1:14-md-2503, 2018 U.S. Dist. LEXIS 164688 (D. Mass. July 18, 2018).................................................................................................... 11

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995) .................................................................................................................... 5

*Kolinek v. Walgreen Co.,* 311 F.R.D. 483 (N.D. Ill. 2015) ......................................................... 12

*Kondash v. Citizens Bank*, *N.A.*, Case No. 18-cv-00288-WES-LDA, 2020 U.S.Dist. LEXIS 241588 (D.R.I. Dec. 23, 2020)................................................................................ passim

*Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017) ................................................................................................................ 6, 12

*Wilkins v. HSBC Bank Nevada, N.A., et al*., Case No. 3:12-cv-04010, 2015 U.S.Dist. LEXIS
   23869 (N.D. Ill. Feb. 27, 2015) .................................................................................................. 7

*Woodrow v. Sagent Auto, LLC,* Case No. 18-CV-1054, 2019 U.S.Dist. LEXIS 118901
   (E.D.Wisc. July 17, 2019) ............................................................................................. 11, 14

**Statutes**

47 U.S.C. § 227(a)(1) .................................................................................................................. 1
47 U.S.C. § 227(b)(1)(A) ............................................................................................................ 1
47 U.S.C. § 227(b)(3)(A) ............................................................................................................ 6

## I.    INTRODUCTION

On April 2, 2021, this Court preliminarily approved a proposed class action settlement between Plaintiff David DeCapua and Defendant Metropolitan Property and Casualty Insurance Company ("MetLife"). Dkt. No. 47. The Settlement creates an $850,000 all-cash common fund for the benefit of 6,950 persons who, like Plaintiff, received text messages sent on behalf of former MetLife employee Rick Lee. Unlike many similar settlements, there is no claims process—every class member who does not exclude himself or herself from the settlement will receive a pro-rated share of the settlement fund.

As the Court is well aware, Class Counsel pursued this matter doggedly through many challenges. Class Counsel has litigated this matter since October 2018. As part of that litigation, this Court dismissed the case after holding that the text messages at issue were not made with an "automatic telephone dialing system" ("ATDS") as defined by the Telephone Consumer Protection Act ("TCPA"), and thus were not actionable. Dkt. No. 38, at 1-2; *see also* 47 U.S.C. § 227(a)(1), (b)(1)(A).[1] Plaintiff appealed this Court's determination, and the Parties reached a settlement while that appeal was pending. Given these circumstances, obtaining a result on behalf of the settling class is a significant result for Class Counsel.

As compensation for their efforts, Class Counsel respectfully move the Court for an award of attorneys' fees of $283,333.33, which represents 33⅓% of the Settlement Fund made available for Class Members. Class Counsel additionally seek reimbursement of their out-of-pocket costs of $14,550.19, which were reasonably incurred in prosecuting the case. This request should be approved because: (1) it represents the market rate for this type of settlement, and (2) it represents a reasonable and appropriate amount in light of the substantial risks presented in

---

[1] The Supreme Court's recent holding in *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021), makes Plaintiff's claims even more challenging.

prosecuting this action, the quality and extent of the work conducted, and the stakes of the case. Class Counsel also respectfully move the Court for a modest incentive award of $5,000 to Plaintiff David DeCapua as recognition of his work on behalf of the Class.

## II.   BACKGROUND AND SETTLEMENT

On July 19, 2018, Plaintiff David DeCapua received a robotext message from Rick Lee, a MetLife employee-agent, which read:

> "Hi David, is your home properly insured? METLIFE offers 100% replacement cost. Let us help find the right coverage for you. Text SECURITY to 313131 or call 614-527-4980 visit https://clk2.me/QuVVa 2end msgs reply STOP."

Dkt. No. 1, at ¶ 18.  Mr. DeCapua had no prior business relationship with Mr. Lee, nor with MetLife, prior to receiving this text message.  Upon receiving the message, Mr. DeCapua called MetLife, and was informed by Mr. Lee's office that it had sent out robotext messages using the "EZ Texting" platform.  The EZ Texting system can, and in the case of the batch of texts sent to Mr. DeCapua, did send robotexts to every contact in a previously stored or generated list of telephone numbers.  *Id.* ¶ 42-47.

On December 21, 2018, MetLife moved to dismiss Plaintiff's complaint for failure to state a claim, arguing that the EZ Texting System is not an ATDS. Dkt. No. 11.  After full briefing and oral argument, Magistrate Judge Almond recognized that the issue presented a close call, but "conclude[d] that Defendant's spam marketing texts at issue here violated the spirit but not the letter of the TCPA." Dkt. No. 25 at 2.  The Magistrate Judge therefore recommended that the Court grant MetLife's motion. *Id.* at 4.  Plaintiff objected to the Report and Recommendation. Dkt. No. 31.  After another oral argument, the Court upheld the Magistrate Judge's ruling.  Dkt. No. 38 at 3.  Plaintiff timely appealed the District Court's ruling.  Dkt. No. 40.

While the appeal was pending, on July 21, 2020, the parties mediated the matter before the Honorable Wayne Andersen (Ret.) of JAMS. This process resulted in a settlement in principle, which was later finalized into the form filed with the Court.

The settlement calls for MetLife to create a cash settlement fund of $850,000, *see* Dkt. No. 46-1, Settlement Agreement and Release ("Agr."), ¶ 2.42, to make payments to resolve the claims of "all 6,950 persons within the United States who may have received a text message on or after May 1, 2018 sent by or on behalf of MetLife former employee Rick Lee." Agr., ¶ 2.40. Settlement Class Members have been sent notice by the settlement administrator[2] by U.S. mail and via a designated settlement website. *Id.* at ¶¶ 7.02, 7.03.

*All* Class members who do not timely exclude themselves from the settlement will receive a pro rata share of the remainder of the Settlement Fund, after payment of appropriate settlement costs approved by the Court, which include the costs of notice and claims administration, attorneys' fees and expenses that the Court may approve, and any incentive award to the Class Representative that this Court may approve. *Id.* at ¶ 4.02(a)-(b). Importantly, members of the class will not be required to engage in *any* sort of claims process, and no part of the Settlement Fund will revert to MetLife. This represents the most straightforward and direct way to provide compensation to members of the Settlement Class.

Class Members who do not exclude themselves from the Settlement will only release claims specifically tailored to the practices that give rise to this matter. In particular, the release is limited to the class members identified during the applicable class period and is limited to

---

[2] Following a competitive bidding process, the parties have selected JND Legal Administration as the claims administrator. *Id.* at ¶ 2.39.

claims arising from or relating to text messages of the sort that gave rise to this Action. *Id.* at ¶ 12.02.

Plaintiff respectfully requests that the Court approve attorneys' fees of $283,333.33, reasonable expenses of $14,550.19, and a modest $5,000 incentive award for Plaintiff DeCapua. As explained below, the requested fee award is in line with the market rate, and it is fair and reasonable. Similarly, the requested incentive award is comparable to other class cases and should be approved.

### III.   LEGAL STANDARD FOR ATTORNEYS' FEE AWARDS IN A CLASS ACTION

"Under the 'common fund doctrine,' attorneys whose efforts lead to the creation of a fund for the benefit of the class are 'entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Neurontin Mktg. & Sales Practices Litig.,* 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980)); *see also* Fed. R. Civ. P. 23(h) (authorizing Court to award reasonable attorney's fees and costs).  In the First Circuit, "[t]he Court may calculate such an award by using a lodestar method and multiplying a reasonable hourly rate by the compensable hours the attorney worked on the matter or it may base the fees on a reasonable percentage of the fund." *Baptista v. Mut. of Omaha Ins. Co.,* 859 F.3d 236, 242 (D.R.I. 2012).  "In recent cases in this Circuit, the more commonly used approach to determining what is a reasonable fee is the percentage-of-fund method." *In re Loestrin 24 Fe Antitrust Litig.,* Case No. 1:13-md-2472-WES-PAS, 2020 U.S.Dist. LEXIS 125746, at **44-45 (D.R.I. July 17, 2020), adopted at 2020 U.S.Dist. 158946 (D.R.I. Sept. 1, 2020) (collecting cases).  "While the First Circuit has not mandated use of the percentage-of-fund method, it has held that the approach 'offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of

the marketplace.'" *In re Loestrin*, 2020 U.S.Dist. LEXIS 125746, at *45 (quoting *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 308 (1st Cir. 1995)). "Indeed, it is fair to say that a clear consensus among federal and state courts has emerged that the percentage of fund approach is the more efficient, better reasoned, and effective method." *Kondash v. Citizens Bank, N.A.*, Case No. 18-cv-00288-WES-LDA, 2020 U.S.Dist. LEXIS 241588, at *11 (D.R.I. Dec. 23, 2020) (internal quotation marks and citations omitted).

When evaluating a proposed fee under the percentage of the fund method, "typical considerations include: (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations." *In re Loestrin*, 2020 U.S.Dist. LEXIS 125746, at **45-46 (internal citations omitted).

## IV.  ARGUMENT

### A.  Class Counsel's Requested Fee Award Is Reasonable.

Plaintiff seeks as his attorneys' fee a percentage of the common fund equal to one-third of the total settlement, or $283,333.33. Given the result obtained for the Class, and the fact that the fee request is set at the "market range," the requested fee award is reasonable and consistent with guidelines in this Circuit. Further, the requested fee award of one-third of the fund is also consistent with the "market price" as reflected in the fees approved by judges in this Circuit in other class cases, considering the risks of non-payment, the quality and extent of Class Counsel's work on behalf of the Settlement Class, and the overall stakes of the case.

The fee requested by Class Counsel meets all required elements, as discussed below.

### *1.     Class Counsel obtained excellent results for the class on a per-person basis.*

The first factor, "the size of the fund and the number of persons benefitted," considers the both the total size of the case, as well as the actual award that individuals within the class will actually receive as a result of the settlement. *See Kondash*, 2020 U.S.Dist. LEXIS 241588, at **15-16 (" First, and most significant, the Settlement Fund provides for a substantial award of money for the benefit of a meaningful percentage of a significantly-sized class, with the collateral benefit of deterring the use of the intrusive robocalls from which Congress tried to protect consumers in enacting TCPA.")

The settlement encompasses a class of 6,950 people. Assuming the Court were to adopt Plaintiff's request on fees, expenses, and incentive awards (and after paying for administration costs), Class Counsel estimates that each class member will receive approximately $75. This is noteworthy for three reasons. First, class members will receive this amount automatically without the need for any claim form. Second, this represents a substantial portion of the hypothetical potential reward for class members—each individual only received one text message, and thus would be eligible for a maximum award of $500. *See* 47 U.S.C. § 227(b)(3)(A). Third, this amount compares very favorably to other TCPA settlements that have been approved by courts across the country, where—in contrast to this case—only a small fraction of class members who submitted claim forms received amounts much less than $75. *See, e.g.*, *Estrada v. iYogi, Inc.,* No. 2:13–01989-WBS-CKD, 2015 U.S.Dist. LEXIS 137299, at *19 (E.D. Cal. Oct. 6, 2015) (granting approval to TCPA settlement where class members would receive an estimated $40 with an opt-in requirement); *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 U.S.Dist. LEXIS 17546, at *11 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action is "an excellent result when

compared to the issues Plaintiffs would face if they had to litigate the matter"); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044-45 (S.D. Cal. 2015) (approving TCPA settlement in which class members received $13.75 each, noting that such a figure "appears to be on the low end of monetary recovery for TCPA class action settlements").

Thus, while the overall settlement fund amount is modest compared to other TCPA settlements, so is the size of the settled class. On a proportionate basis, the settlement provides a good and meaningful result for class members. Class Counsel's fee request does not undermine the value to class members.

### 2. *Class Counsel are experienced attorneys who litigated the case efficiently.*

Class counsel in this case consist of three firms: Lieff Cabraser Heimann & Bernstein, LLP, Meyer Wilson Co., LPA, and the Law Offices of Peter N. Wasylyk. Lieff Cabraser is one of the largest full-service plaintiff-side law firms in the country, with expertise in a wide variety of subject areas. Ex. 1, Hutchinson Dec., at Ex.A. Meyer Wilson is a plaintiffs' class action firm, having successfully litigated dozens of class actions all over the country. Ex. 2, Wilson Dec., at ¶ 5. Together, Lieff Cabraser and Meyer Wilson have been at the forefront of TCPA class action litigation, having collaborated on several of the largest settlements in the country. *See, e.g., Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act Litig.)*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (granting final approval to an over $75 million TCPA settlement with more than 17 million class members); *Wilkins v. HSBC Bank Nevada, N.A., et al.*, Case No. 3:12-cv-04010, 2015 U.S.Dist. LEXIS 23869, at ** 11-12 (N.D. Ill. Feb. 27, 2015) (granting final approval of a $39.975 million TCPA settlement with 9 million class members). Finally, Peter Wasylyk is a veteran Rhode Island consumer attorney who has practiced extensively in this Court. Hutchinson Dec., at ¶ 60.

7

Moreover, this case has been litigated efficiently, in order to maximize results for the class and to "cut to the chase." Lieff Cabraser and Meyer Wilson have worked on over two dozen matters together, and thus have developed experience in distributing litigation tasks in a way that avoids duplication. Critical case events, including hearings on the motion to dismiss, were staffed by one attorney from either Lieff Cabraser or Meyer Wilson, along with Rhode Island counsel. As discussed in more detail below, Class Counsel focused on the meaningful and outcome-determinative issues in the case, and once those issues were fully explored, brought the matter to a resolution for class members. There were no unnecessary efforts that did not provide direct benefit to members of the class, maximizing the value of the work of counsel.

### 3. *This was a complex case that was fully litigated prior to settlement.*

Class Counsel fully and completely explored all relevant issues in this case prior to resolution. From the outset of the case, it was clear that a major question in the case would be whether the equipment used to send the text messages to class members fit within the statutory definition of an ATDS. There were limited factual matters to be resolved or explored in the case, as the parties agreed on the size of the proposed class and the sequence of events that gave rise to claims. As a result, while there was no formal discovery exchanged between the parties, Class Counsel had a full and complete picture of the strengths and weaknesses of the case from an early stage, as well as the tools to value a potential settlement on behalf of the class. This made settlement discussions not only fruitful, but also fully informed and considered.

As to the core issue—whether the dialing system at issue was an ATDS—Class Counsel fully litigated the question on behalf of the class members. Class Counsel briefed the issue twice, in the form of the original motion and the objection to the Magistrate Judge's Report and Recommendation. *See* Dkt. No. 13 (Opposition to the Motion to Dismiss); No. 31 (Objection to the R&R); Dkt. No. 34 (Reply in Support of Objection to R&R). In addition, Class Counsel

appealed the Order of this Court to the First Circuit, and were prepared to fully litigate the issue in front of the appellate court. This persistence in pursuing the core issue in the case was directly responsible for the result obtained on behalf of members of the settled class.

### 4.     *The risk of non-payment in this case was real.*

"Many cases recognize that the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award." *In re Lupron Mktg. & Sales Practices Litig.*, Case No. 01-CV-10861, 2005 U.S.Dist. LEXIS 17456, at * 15 (D. Mass. Aug. 17, 2005) (quoting *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 54 (2d Cir. 2000) (internal quotation marks omitted)).  Here, Class Counsel litigated the entire case on a pure contingency fee basis. This arrangement necessarily creates a substantial risk of non-payment.  As a result:

> generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this bonus methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing

*In re Lupron*, 2005 U.S.Dist. LEXIS 17456, at * 16 (quoting *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)).

Moreover, the risks of non-payment were not merely theoretical. This Court found that Plaintiff's claims should be dismissed. Plaintiff's chances on appeal were, at best, uncertain, especially in light of the Supreme Court's opinion in *Duguid* that creates (at a minimum) additional headwinds in pursing his claim. Absent the settlement, members of the class would likely have obtained no recovery, and thus Class Counsel would receive no compensation. Nevertheless, Class Counsel continued to pursue this matter fully and completely on behalf of class members, notwithstanding the challenges. *See Kondash*, 2020 U.S.Dist. LEXIS 241588, at

\* 9 (noting, in a similar TCPA case "[m]indful of these risks, Class Counsel accepted this case on a purely contingent basis, exposing himself, his small firm and his local counsel to the hazards of investing substantial time and treasure over a protracted period (to the exclusion of other work) with no return.")  This factor supports the requested fee award.

### 5.  *Class Counsel Expended Significant Time on This Matter.*

While the basis of Class Counsel's fee request is the "percentage of the fund" approach, it is customary in the First Circuit to perform a "lodestar cross-check," in which the hours expended by counsel are reviewed to determine the appropriateness of the proposed percentage. "While exclusive reliance on daily time records to calculate the lodestar and a multiplier is outmoded and rarely used, the lodestar continues to be examined as a 'cross-check' on the reasonableness of a fee calculated by using a percentage-of-settlement method." *In re Loestrin,* 2020 U.S.Dist. LEXIS 125746, at \* 47.  An appropriate "multiplier"—i.e., the ratio of the total lodestar to the proposed fee award—in a particular case using the lodestar cross-check, is determined by the circumstances of the case.  "For example, a fee that is more than double (a multiplier larger than two) the lodestar should be closely scrutinized in so-called "megafund" cases (where the fund approaches or exceeds $100 million). By contrast, in a relatively smaller class case, such an amplification of the lodestar is generally accepted as appropriate." *Kondash*, 2020 U.S.Dist. LEXIS 241588, at \*\* 15-16 (internal citations omitted).

Here, the lodestar cross-check supports the fee derived from the percentage of the fund. Class Counsel have spent 607.7 total hours on this matter.  Ex. 1, Dec. of Hutchinson at ¶ 50 (303.9 hours); Ex. 2, Dec. of Wilson at ¶ 14 (269.8 hours); Ex. 1, (Wasylyk), ¶ 60 (34.0 hours). Multiplied by their customary rate, this results in a total lodestar of $334,192.00.  Ex. 1, Dec. of Hutchinson at ¶ 50 ($169,025.00 in lodestar); Ex. 2, Dec. of Wilson at ¶ 14 ($140,517 in lodestar); Ex. 1, (Wasylyk), ¶ 60 ($24,650.00 in lodestar).  Thus, $283,333.33 in attorney's fees

10

reflects a multiplier of 0.85. This is a so-called "negative multiplier," or more accurately, a fractional multiplier. In other words, Class Counsel seek somewhat *less* than their total lodestar. This is well below the range that has been approved in this Court and other courts in the First Circuit. *See Kondash*, 2020 U.S. Dist. LEXIS 241588, at ** 17-18 (approving a 2.7 times multiplier on lodestar); *In re Loestrin*, 2020 U.S.Dist. LEXIS 125746, at * 51 (approving multipliers of 1.05 and .96); *In re Solodyn Antitrust Litig.*, Case No. 1:14-md-2503, 2018 U.S. Dist. LEXIS 164688, at ** 18-19 (D. Mass. July 18, 2018) (approving a "modest" enhancement over lodestar of $1 million).

### 6. *The requested fee reflects the fees awarded in many other settlements.*

Class Counsel seek one-third of the total recovery. This is consistent with the standard contingency fee percentage in both class and non-class cases, which is often (at least) one-third of total recovery. *See Kondash*, 2020 U.S. Dist. LEXIS 241588, at * 17 ("I find that, in a TCPA case, a percentage of fund ranging from one-third to forty percent is consistent with the market rate for such contingency arrangements in TCPA cases."); *In re Loestrin,* 2020 U.S.Dist. LEXIS 125746, at ** 46-47 ("Use of the market-based approach is consistent with the opinion of Professor Silver that the market method is preferred, resulting in his endorsement of a fee based on a one-third percentage-of-fund. Based on his research, Professor Silver opined that 'the market rate for contingent fee lawyers ranges from 25 percent to 40 percent of clients' recoveries.'"); *see also In re Neurontin*, 58 F. Supp. 3d at 172 (observing that "nearly two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund" and granting 28% of fund).

Indeed, an award of one-third of a settlement fund is commonplace in TCPA cases in many courts across the country. *See, e.g., Woodrow v. Sagent Auto, LLC,* Case No. 18-CV-1054, 2019 U.S.Dist. LEXIS 118901, at * 3 (E.D.Wisc. July 17, 2019) (holding, in the context of a

TCPA settlement, "Plaintiff's attorneys' fee is one-third of the common fund, plus litigation costs, and is therefore presumptively reasonable and aligned with this circuit's market rate for similar litigation"); *Markos*, 2017 U.S.Dist. LEXIS 17546, at ** 9-10 (approving a one-third fee award in a TCPA class action settlement); *In re Capital One Tel. Consumer Protection Act Litig.*, 80 F. Supp. 3d at 803-807 (modified fee structure including 36% of the first $10 million); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 502-03 (N.D. Ill. 2015) (approving 36% fee award).

Consequently, the requested fee award falls in line with numerous other class settlements approved as reasonable in this Court and in courts across the country.

### 7. *Public policy supports Plaintiff's fee request.*

"[T]here is a significant societal interest in obtaining redress for [consumers] whose harms could not, given the cost of litigation, be pursued on an individual basis." *In re Lupron,* 2005 U.S. Dist. LEXIS 17456, at * 23. This is particularly true in the TCPA context, since "[a]s a practical matter. . . a single plaintiff is unlikely to have the potential for a damage recovery large enough to cover the attorney's fee and costs required for litigating a complex TCPA case to conclusion; this means that the private right of action that Congress created could be moribund but for the availability of relief on a class-wide basis." *Kondash*, 2020 U.S. Dist. LEXIS 241588, at **7-8.

Absent the settlement that is before the Court, it is all but certain that class members would receive no compensation for invasive text messages that, whatever the ultimate resolution of the ATDS issue, were unwanted and unsolicited. Pursuing these claims only makes economic sense in the class action context. Class Counsel did pursue those claims, bringing them to a resolution that provided meaningful relief for class members. It is in the public interest to incentivize counsel to prosecute cases of this type on behalf of consumers. *See Kondash,* 2020 U.S. Dist. LEXIS 241588, at * 9 ("[B]y ending this case with a certified class and a Settlement

Fund large enough for meaningful compensation for the class, Class Counsel successfully sidestepped all of these potential landmines and achieved an outcome that confers a substantial benefit on the class.") Thus, public policy considerations support Class Counsel's requested reward.

      **B.**    **The Court Should Also Award Reasonable Reimbursement for Expenses.**

It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses. *See Kondash*, 2020 U.S. Dist. LEXIS 241588, at *18 ("When, as here, the expenses requested are modest and synch with the matters that arose over the course of the case, the Court's review should be for irregularities and, if none are apparent, should review the expenses as presented."); s*ee also In re GM LLC Ignition Switch Litig.*, Case No. 14-md-2543, 2020 U.S.Dist. LEXIS 239312, at ** 256-57 (S.D.N.Y. Dec. 18, 2020) (approving a request for costs where "[t]he cost reimbursement requested by Class Counsel are for expenses typically billed by attorneys to paying clients in the marketplace and includes fees paid to experts, mediation fees, notice costs, computerized research, document production and storage, court fees, reporting services, and travel in connection with the litigation.").

Here, Class Counsel have incurred $14,550.19 in reimbursable expenses related to filing, appearances, mediation, litigation, and travel for court hearings. Ex. 1, Hutchinson Decl, ¶ 59, Ex. 2, Wilson Decl. ¶ 19. These expenses are relatively modest and were necessary to prosecute litigation of this type on behalf of the Settlement Class, and they are typical of expenses regularly awarded in class actions. *Id.* Accordingly, Plaintiff requests that the Court approve expenses in the amount of $14,550.19.

      **C.**    **The Incentive Award to the Class Representative Should Be Approved.**

Class Counsel also respectfully request that the Court grant an incentive award of $5,000 to Plaintiff DeCapua for his efforts on behalf of the Class. "Incentive awards serve an important function in promoting class action settlements, particularly where, as here, the named plaintiffs participated actively in the litigation." *In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at ** 24-25. "This settled practice encourages entities and individuals to agree to serve as the named class representative in a complex class action, including to be exposed to potentially substantial expenses in responding to discovery, monitoring the litigation and participating at trial." *In re Loestrin*, 2020 U.S.Dist. LEXIS 125746, at * 53.

The Class Representative, David DeCapua, spent considerable time pursuing Class Members' claims. In particular, Mr. DeCapua undertook significant pre-filing investigation on his own initiative, contacting the agent responsible for the text messages and learning about the dialing system used in connection with these messages. Ex. 2, Wilson Dec., at ¶ 8. By identifying the dialer through this investigation at the outset, this case was greatly streamlined, allowing the parties to focus on the real issues at play and avoiding the need for discovery during the initial phases of the case. Likewise, during the course of the litigation, Mr. DeCapua was highly involved in the process, and was active in ensuring that class members received appropriate and zealous representation.

Moreover, the amount requested here, $5,000, is comparable to or less than other awards approved by federal courts in other TCPA actions. *See, e.g., Woodrow,* 2019 U.S.Dist. LEXIS 118901, at * 4 (approving a $10,000 service award); *In re Capital One,* 80 F. Supp. 3d at 807 (awarding a $5,000 incentive award to each class plaintiff)*; see also In re Loestrin*, 2020 U.S.Dist. LEXIS 125746, at ** 53-54 (approving $5,000 incentive award to each consumer class representative).

14

For these reasons, Plaintiff respectfully requests the Court award Plaintiff $5,000 as an incentive award.

## V.     CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant this motion and award Class Counsel $283,333.33 in fees and $14,550.19 to reimburse their reasonable expenses. Class Counsel further requests that the Court approve a service award to Plaintiff DeCapua in the amount of $5,000.

Dated: June 16, 2021                            By:   /s/ *Peter N. Wasylyk*

Peter N. Wasylyk (R.I. Bar # 3351)
LAW OFFICES OF PETER N. WASYLYK
1307 Chalkstone Avenue
Providence, Rhode Island 02908
Telephone: 401-831-7730
Facsimile: 401-861-6064
Email: pnwlaw@aol.com

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin*
Email:  jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson*
Email:  dhutchinson@lchb.com
Evan J. Ballan*
Email:  eballan@lchb.com
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

>MEYER WILSON CO., LPA
>Matthew R. Wilson*
>Email:  mwilson@meyerwilson.com
>Michael J. Boyle, Jr.*
>Email:  mboyle@meyerwilson.com
>1320 Dublin Road, Ste. 100
>Columbus, Ohio 43215
>Telephone:  (614) 224-6000
>Facsimile:  (614) 224-6066
>
>*Admitted Pro Hac Vice
>
>*Attorneys for Plaintiff and the Proposed Class*

### Certificate of Service

I hereby certify that on June 16, 2021 I served the foregoing to all counsel in this matter via ECF notification:

>/s/  *Michael J. Boyle, Jr.*
>
>One of the Attorneys for Plaintiff and the Class

16