# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DAVID DECAPUA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Defendant, | **Case No. 1:18-cv-00590-WES-LDA** |

## PLAINTIFFS' UNOPPOSED MOTION
## FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

# **TABLE OF CONTENTS**

|  | Page |
|---|---|
| Introduction……………………………………………………………………………..... | 1 |
| Summary of the Settlement………………………………...…………………………….. | 2 |
| Argument………………………………………………………………………………… | 3 |
| I. The Settlement Should Be Approved As Fair, Reasonable, and Adequate…….….… | 3 |
|     A. The Class representatives and Class Counsel have adequately represented the Class ……………………………………………………………………...... | 4 |
|     B. The settlement was negotiated at arm's-length by vigorous advocates, and there has been no fraud or collusion………………………………….....….…...... | 5 |
|     C. The settlement provides substantial relief for the Class…...…………….……. | 6 |
|         1. Diverse and substantial legal and factual risks weigh in favor of settlement ..……………………………………………..……………… | 7 |
|         2. The monetary terms of this proposed settlement fall favorably within the range of prior TCPA class action settlements………………. | 7 |
|         3. The proposed award of attorneys' fees is fair and reasonable ...……… | 8 |
|         4. There are no side agreements between the parties other than the Settlement ………………………………………………………….…. | 9 |
|     D. The method of providing relief is effective and treats all members of the Classes fairly…………………………………………………….......….….... | 9 |
| II. The Settlement Satisfies Rule 23……………………………………………………….. | 10 |
|     A. The members of the class are so numerous that joinder of all of them is impracticable ……………………………………………………………….…... | 10 |
|     B. Questions of law and fact are common to the members of the class …..……... | 11 |
|     C. Plaintiff's claims are typical of the claims of the members of the class he represents …....……………………………………………………………….… | 12 |
|     D. The questions of law and fact common to the members of the class predominate over any questions potentially affecting only individual members …...……... | 12 |
|     E. A class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the class …………….……………. | 13 |
| III. The parties' notice plan satisfied the requirements of Rule 23 and due process ……..… | 14 |
| Conclusion…………………………………..……………………………………………. | 15 |

# **TABLE OF AUTHORITIES**

**Cases**

*Allan v. Pa. Higher Educ. Assistance Agency*, 968 F.3d 567 (6th Cir. 2020) ............................... 1
*Amchem Prods. V. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)................... 3
*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 12, 13
*Baptista v. Mut. of Omaha Ins. Co.,* 859 F. Supp.2d 236 (D.R.I. 2012).................................... 5, 6
*Couser v. Comenity Bank,* 125 F. Supp. 3d 1034 (S.D. Cal. 2015)................................................ 8
*Curtis v. Scholarship Storage, Inc.*, Case No. 2:14-cv-303, 2016 U.S.Dist. LEXIS 70410 (D.Me. May 31, 2016) ........................................................................................................................... 9
*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................................... 6
*Del Sesto v. Prospect CharterCARE, LLC,* Case No. 18-328, 2019 U.S.Dist. LEXIS 175173 (D.R.I. Oct. 9, 2019)................................................................................................................. 3
*Eisen v. Carlisle & Jacquelin*,417 U.S. 156 (1974)..................................................................... 14
*Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015)  8
*Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021) ......................................................................... 7
*Garcia-Rubiera v. Calderon*, 570 F.3d 443 (1st Cir. 2009) ........................................................ 11
*Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301 (11th Cir. 2020) ..................................... 1
*Grady v. de Ville Motor Hotel, Inc.*,415 F.2d 449 (10th Cir. 1969) .............................................. 8
*Hanlon v. Chrysler Corp.*,150 F.3d 1011 (9th Cir. 1998) ............................................................. 8
*In re AOL Time Warner ERISA Litig.,* Case No. 02-cv-8853, 2006 U.S.Dist. LEXIS 70474 (S.D.N.Y. Sept. 27, 2006) ....................................................................................................... 4
*In re Checking Account Overdraft Litig.*, 275 F.R.D. 654 (S.D. Fla. 2011).................................. 6
*In re Loestrin 24 FE Antitrust Litig.,* Case No. 1:13-md-2472, 2019 U.S.Dist. LEXIS 118308 (D.R.I. July 2, 2019)......................................................................................................... 11, 12
*In re Loestrin 24 FE Antitrust Litig.,* Case No. 1:13-md-2472, 2020 U.S.Dist. LEXIS 125746 (D.R.I. July 17, 2020).............................................................................................................. 9
*In re Pharm. Indus. Average Wholesale Price Litig.,* 588 F.3d 24 (1st Cir. 2009) ........................ 5
*In re Relafen Antitrust Litig.,* 218 F.R.D. 337 (D. Mass. 2003) ................................................... 11
*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007).................................... 14
*In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347 (E.D.N.Y. 2000) ............................................ 6
*Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011) ........................ 6
*Marcoux v. Susan J. Szwed, P.A.,* Case No. 2:15-cv-093, 2017 U.S.Dist. LEXIS 23616 (D.Me. Feb. 21, 2017) .......................................................................................................................... 7
*Markos v. Wells Fargo Bank, N.A.,* No. 1:15-cv-01156-LMM, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017).................................................................................................................................. 8
*Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018).................................................1
*Medoff v. CVS Caremark Corp.,* Case No. 09-cv-554-JNL, 2016 U.S.Dist. LEXIS 19135 (D.R.I. Feb. 17, 2016)....................................................................................................................... 4, 7
*Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 (D.N.J. Sept. 14, 2009)................................ 6

*Natchitoches Parish Hosp. Serv. Dist. V. Tyco Int'l,* Case No. 05-cv-12024, 2010 U.S.Dist. LEXIS 155578 (D. Mass. Mar. 12, 2010) ........................................................................... 9
*P.R. Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13 (1st Cir. 2014) .................................................. 4
*Parent/Professional Advocacy League v. City of Springfield,* 943 F.3d 13 (1st Cir. 2019) ......... 11
*Pizzarelli v. Cadillac Lounge, LLC,* Case No. 15-cv-254, 2018 U.S.Dist. LEXIS 117338 (D.R.I. Apr. 13, 2018) ...................................................................................................................... 5, 12
*Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346 (C.D. Cal. June 15, 2010) ........... 6
*Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036 (2016) .......................................................... 12

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................................................ 9
McLaughlin on Class Actions (8th ed. 2011) ................................................................................. 5

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................................... 10, 11
Fed. R. Civ. P. 23(a)(1) ................................................................................................................ 11
Fed. R. Civ. P. 23(a)(2) ................................................................................................................ 11
Fed. R. Civ. P. 23(a)(3) ................................................................................................................ 12
Fed. R. Civ. P. 23(a)(4) .................................................................................................................. 5
Fed. R. Civ. P. 23(b)(3) .......................................................................................................... 12, 13
Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................... 14, 15
Fed. R. Civ. P. 23(e)(1) ................................................................................................................ 14
Fed. R. Civ. P. 23(e)(2) .................................................................................................................. 3
Fed. R. Civ. P. 23(e)(2)(C)(ii) ...................................................................................................... 10

# INTRODUCTION

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, prohibits the use of an automatic telephone dialing system ("ATDS") to make calls or send text messages to cellular telephones without prior express consent. In this matter, the meaning of an ATDS was hotly contested. This Court held, while noting that the statute "lacks precision, muddying its application," that text messages sent by an former employee of Defendant Metropolitan Property and Casualty Insurance Company ("MetLife") to Plaintiff David DeCapua ("Plaintiff") using a texting system called "EZ Texting" were *not* sent by an ATDS. Dkt. No. 38, at 1-2. Plaintiff appealed that determination. At the same time, a Circuit split was developing on this legal issue.[1]

In the midst of this legal uncertainty—while Plaintiff's appeal was pending before the First Circuit Court of Appeals and after the United States Supreme Court granted a petition for a writ of certiorari in *Duguid*—the Parties mediated the case. The mediation produced a negotiated resolution, with each party recognizing the respective risks they faced on the ATDS question. Under this framework, MetLife agreed to create a settlement fund of $850,000 that would be used to make payments to the 6,950 persons who, like Plaintiff, received text messages, as well as pay for notice and administration costs, attorneys' fees and costs, and incentive awards, as approved by the Court.

On April 2, 2021, this Court preliminarily approved a proposed class action settlement between Plaintiff and MetLife (the "Settlement"). Dkt. No. 47. Notice has gone out pursuant to

---

[1] *Compare Allan v. Pa. Higher Educ. Assistance Agency*, 968 F.3d 567 (6th Cir. 2020); *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 283-84 (2d Cir. 2020); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052-53 (9th Cir. 2018); *with Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 464, 469 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1310 (11th Cir. 2020); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119-21 (3d Cir. 2018). The Supreme Court ultimately determined the issue in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) ("*Duguid*").

the Court's Preliminary Approval Order. In addition, the Parties approved and sent a second round of notice to all Class members to inform them that the Final Approval Hearing would proceed via remote teleconferencing. *See* Text Order (July 29, 2021) (instructing the parties "to take reasonable steps to ensure that all class members receive actual notice of this change"). After these two rounds of due process notice, no member of the Class has objected to the Settlement or opted out. Plaintiff requests that the Court, after the fairness hearing scheduled for August 17, 2021, grant final approval to the Settlement and certify the Settlement Class

MetLife does not oppose this motion.

## **SUMMARY OF THE SETTLEMENT**[2]

The settlement calls for MetLife to create a cash Settlement Fund of $850,000, *see* Dkt. 46-1, Settlement Agreement and Release ("Agr."), ¶ 2.42, to make payments to resolve the claims of "all 6,950 persons within the United States who may have received a text message on or after May 1, 2018 sent by or on behalf of MetLife former employee Rick Lee." Agr., ¶ 2.40. There is no claims process for Class members; *all* Class members will receive a pro rata share of the Settlement Fund, less any administrative costs, attorneys' fees, and service awards approved by the Court. *Id.* at ¶ 4.02(a)-(b). The release is specifically tailored to claims arising from or relating to the text messages that gave rise to this Action. *Id.* at ¶ 12.02.

Class notice was delivered via direct mailing of a postcard. Declaration of Jennifer M. Keough ("Keough Dec."), at ¶ 7. No Class member objected to the Settlement or opted out. Keough Dec., ¶¶ 17, 19. All class members also received a second round of notice to inform them that the Final Approval Hearing would be conducted via remote teleconferencing. Keough

---

[2] Any undefined capitalized terms shall have the meaning attributed to them in the Parties' Settlement Agreement, which is being submitted contemporaneously herewith.

2

Dec., at ¶¶ 10 (email notice), 13 (website notice).

## ARGUMENT

I. **THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23(e)(2)**

"A Court may approve a settlement in a class action only upon a finding that the settlement is 'fair, reasonable, and adequate.'" *Del Sesto v. Prospect CharterCARE, LLC,* Case No. 18-328, 2019 U.S. Dist. LEXIS 175173, at * 10 (D.R.I. Oct. 9, 2019) (citing Fed. R. Civ. P. 23(e)(2)). "The inquiry appropriate under Rule 23(e) . . . protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise." *Amchem Prods. v. Windsor,* 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotation marks and citations omitted).

When a court certifies a class at the same time as approving a settlement, the court must find the four prerequisites of Rule 23(a) satisfied, as well as one of the requirements of one of the three categories under Rule 23(b). Where, as here, the proposed Settlement would bind Class members, the Court may approve the Settlement after a conducting a hearing hearing and finding that the Settlement is "fair, reasonable, and adequate," based on the following factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

3

Fed. R. Civ. P. 23(e)(2). As explained below, consideration of these factors supports final approval of the Settlement.

> A. **The Class representatives and Class Counsel have adequately represented the Class.**

By their very nature, because of the uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. In evaluating potential settlements, "[t]he court performs this analysis in the shadow of the 'strong public policy in favor of settlements,' particularly in class action litigation." *Medoff v. CVS Caremark Corp.,* Case No. 09-cv-554-JNL, 2016 U.S. Dist. LEXIS 19135, at *15 (D.R.I. Feb. 17, 2016) (quoting *P.R. Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13, 20 (1st Cir. 2014)). This matter is no exception.

Here, the parties are fully informed of the relevant facts in the case. Critically, the facts of this case are simple and not in dispute: former MetLife employee Rick Lee caused text messages to be sent to 6,950 individuals using the EZ Texting system. Unlike many cases, the dispute in this case, as well as the basis of the settlement, is largely tied to the legal significance of those undisputed factual allegations. Thus, notwithstanding the fact that no formal discovery occurred in this case, all Parties entered into negotiations with full knowledge of all relevant information. "The relevant inquiry . . . is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement. The parties need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the settlement." *In re AOL Time Warner ERISA Litig.,* Case No. 02-cv-8853, 2006 U.S. Dist. LEXIS 70474, at *21 (S.D.N.Y. Sept. 27, 2006) (internal quotation marks and citations omitted); *see also Baptista v. Mut. of Omaha Ins. Co.,* 859 F. Supp. 2d 236, 241

4

(D.R.I. 2012) (finding that the parties had sufficient information to settle the case intelligently, notwithstanding that "[d]iscovery in this case appears to have been minimal and primarily informal")

In addition, a plaintiff and counsel are adequate if "[counsel] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). "[T]he adequacy-of-representation requirement . . . raises concerns about the competency of class counsel and conflicts of interest." *Pizzarelli v. Cadillac Lounge, LLC*, Case No. 15-cv-254, 2018 U.S.Dist. LEXIS 117338, at * 25 (D.R.I. Apr. 13, 2018) (internal quotation marks omitted).

Here, Plaintiff's claims are aligned with the claims of the other class members. He thus had every incentive to vigorously pursue the claims of the class, as he has done to date by remaining involved in this matter since its inception, including in the settlement process. In addition, Plaintiff retained the services of law firms with extensive experience in litigating consumer cases, including TCPA actions in particular, as well as with class actions. Class Counsel believe that the Parties' settlement is fair, reasonable, and adequate, and in the best interests of the members of the Class. Class Counsel also believe that the benefits of the Parties' settlement far outweigh the delay and considerable risk of proceeding to trial.

### B. The settlement was negotiated at arm's-length by vigorous advocates, and there has been no fraud or collusion.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); *see also In re Pharm. Indus. Average Wholesale Price Litig.,* 588 F.3d 24, 32-33 (1st Cir. 2009) ("If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable."); *In re Toys "R" Us Antitrust Litig.*, 191

F.R.D. 347, 352 (E.D.N.Y. 2000) ("Most significantly, the settlements were reached only after arduous settlement discussions conducted in a good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator.")[3]

Here, the Settlement Agreement resulted from good-faith, arm's-length settlement negotiations, culminating in a mediation session with the Hon. Wayne Andersen (Ret.) of JAMS. *See* Agr. at ¶ 1.03. Plaintiff and MetLife submitted detailed mediation submissions to Judge Andersen setting forth their respective views as to the strengths of their cases. *Id.* Accordingly, the parties negotiated their settlement at arm's-length, absent any fraud or collusion. *See Baptista,* 859 F. Supp. 2d at 241 ("In light of these facts . . . the Court concludes that this is a good settlement which was achieved at an arm's length negotiation with the services of a mediator.") Moreover, Judge Andersen has mediated hundreds of cases, including many TCPA class action cases.

### C. The Settlement provides substantial relief for the Class.

Plaintiff's and Class Counsel's zealous advocacy, the arm's-length nature of the Settlement, the relief afforded under the Agreement, and the equitable treatment to the Class all support a finding that the Settlement is fair, reasonable, and adequate.

---

[3] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) ("The Court finds that the Settlement was reached in the absence of collusion, is the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator[.]"); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

1. **Diverse and substantial legal and factual risks weigh in favor of settlement.**

The Court must also consider the likelihood and extent of any recovery from the defendants absent settlement. *See Medoff,* 2016 U.S. Dist. LEXIS 19135, at **18-19 (finding the proposed settlement "reasonable in light of the class's potential recovery"); *see also Marcoux v. Susan J. Szwed, P.A.,* Case No. 2:15-cv-093, 2017 U.S. Dist. LEXIS 23616, at **5-7 (D. Me. Feb. 21, 2017) (approving a settlement that provided a reasonable percentage of potential recovery in light of possible impediments to obtaining that amount at trial).

MetLife has a defense that would be case-dispositive if it prevailed on appeal: that the system at issue that sent the text messages to class members did not constitute an ATDS. Indeed, this Court held as much, and dismissed Plaintiff's case. Moreover, the Supreme Court's recent holding in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), makes Plaintiff's claims even more challenging. In that light, the proposed Settlement represents substantial value for Class members, and represents the advantageous choice under the circumstances over continuing to pursue claims in litigation. *See Wright v. Nationstar Mortgage LLC*, No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) (approving TCPA settlement where "Plaintiffs would have faced uncertainty surrounding the definition of an 'automatic telephone dialing system' had the case proceeded in litigation"). Indeed, if Plaintiff had not settled, he ran a substantial risk that he would have lost the case outright after the *Duguid* case, meaning that Class members would have received nothing. The fact that Class members will receive compensation under the Settlement notwithstanding the existential challenge *Duguid* poses to their claims makes this an outstanding result for the Class.

2. **The monetary terms of this proposed settlement fall within the range of prior TCPA class action settlements.**

"In most situations, unless the settlement is clearly inadequate, its acceptance and

7

approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Here, the parties agreed to resolve this matter for a settlement fund of $850,000, which (if the Court grants Plaintiff's motion for attorney fees, costs, and service award in full) would amount to an automatic payment of more than $70 to each Class member. This figure compares extremely well with many other TCPA class action settlements that courts have approved. *See, e.g., Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members would receive an estimated $40); *Markos v. Wells Fargo Bank, N.A.,* No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"); *Couser v. Comenity Bank,* 125 F. Supp. 3d 1034, 1044-45 (S.D. Cal. 2015) (approving TCPA settlement in which class members received $13.75 each, noting that such a figure "appears to be on the low end of monetary recovery for TCPA class action settlements")

### 3. The proposed award of attorneys' fees is fair and reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are

8

also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii) . Class Counsel seek an award of fees no greater than $283,333.33, one-third of the common fund, plus $14,550.19 in out-of-pocket costs. This amount falls squarely in line with other approved class settlements in the First Circuit. *E.g., In re Loestrin 24 FE Antitrust Litig.*, Case No. 1:13-md-2472, 2020 U.S. Dist. LEXIS 125746, at **49-51 (D.R.I. July 17, 2020) (approving an award of one-third of the value of the fund); *Curtis v. Scholarship Storage, Inc.*, Case No. 2:14-cv-303, 2016 U.S. Dist. LEXIS 70410, at * 11 (D. Me. May 31, 2016) (approving a one-third fee and noting "Plaintiffs' counsel performed this work on a contingent fee basis, assuming the risk that there would be no recovery and therefore no compensation"); *Natchitoches Parish Hosp. Serv. Dist. V. Tyco Int'l,* Case No. 05-cv-12024, 2010 U.S. Dist. LEXIS 155578, at *15 (D. Mass. Mar. 12, 2010) (same).

Class Counsel filed a motion for fees, costs, and incentive awards, Dkt. No. 48, which was posted to the settlement website in advance of the deadline to object. Not one class member has objected. For the reasons explained in that motion, the requested fees and costs are reasonable and should be approved.

  **4.**  **There are no side agreements between the parties other than the Settlement.**

No side agreements exist. *See* Rule 23(e)(2)(c)(iii). This provision is aimed at "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e), advisory committee notes 2003 amendments.

  **C.**  **The method of providing relief is effective and treats all members of the Class fairly.**

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the

adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This Settlement proposes the gold standard in Class member relief: cash payments. Moreover, the allocation of the Settlement Fund among the Class members is straightforward. Each member of the Class will receive a check equal to their *pro rata* share of the Settlement Award. There is *no claims process*: Class members need not complete a form or produce any records and there are no impediments to receiving compensation. The Settlement puts no barriers between Class members and their compensation, which is the ultimate purpose of the Settlement.

## II.   THE SETTLEMENT SATISFIES RULE 23.

Rule 23(e)(1)(B), as amended in 2018, provides that a Court should determine at preliminary approval and before issuing notice whether giving notice is "justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." This Court already found at preliminary approval that it was "likely" to find that the Settlement Agreement fair, reasonable, and adequate, that Class member notice was appropriate and warranted, and that the Class should be certified. The Class satisfies the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), and thus supports final approval.

### A.   The members of the class are so numerous that joinder of all of them is impracticable.

Rule 23(a) requires that a class be "so numerous that joinder of all members is

10

impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no strict minimum number of plaintiffs required to demonstrate impracticability, there is a general presumption that 'if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" *In re Loestrin 24 FE Antitrust Litig.,* Case No. 1:13-md-2472, 2019 U.S.Dist. LEXIS 118308, at *28 (D.R.I. July 2, 2019) (quoting *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009)); *see also In re Relafen Antitrust Litig.,* 218 F.R.D. 337, 342 (D. Mass. 2003) (finding numerosity with a proposed settlement class of at least sixty members).

Here, there are 6,950 class members. *See* Agr., ¶ 2.40. Joinder, therefore, is impracticable, and the class thus easily satisfies Rule 23's numerosity requirement.

### B. Questions of law and fact are common to the members of the class.

Rule 23(a) also requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A question is common if it is 'capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Parent/Professional Advocacy League v. City of Springfield,* 943 F.3d 13, 28 (1st Cir. 2019) (quoting *Wal-Mart Stores, Inc., v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (internal quotation marks omitted)). "Plaintiffs need only articulate a single common question to meet the commonality requirement." *Rapuano,* 334 F.R.D. at 648 (citing *Dukes*, 564 U.S. at 359).

Here, the claims of the members of the class stem from the same factual circumstances—telemarketing text messages sent by a single MetLife employee to potential customers, in alleged violation of the TCPA. Common questions include whether the messages were sent using an ATDS, whether the text messages violated the TCPA, and whether MetLife is responsible for text messages sent by their (now former) employee.

      **C.**      **Plaintiff's claims are typical of the claims of the members of the class he represents.**

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of the Class. Fed. R. Civ. P. 23(a)(3). "Typicality often overlaps with the commonality requirement." *Pizzarelli*, 2018 U.S. Dist. LEXIS 117338, at * 24. "[M]any courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." *In re Loestrin,* 2019 U.S.Dist. LEXIS 118308, at * 36 (quoting 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1764 (rev. 4th ed. 2018) (internal quotation marks omitted)).

Plaintiff received a text message from a single MetLife employee. Plaintiff brings a single legal claim—violation of the TCPA—based on that factual predicate. Typicality is met here.

      **D.**      **The questions of law and fact common to the members of the class predominate over any questions potentially affecting only individual members.**

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 634 (1997). Predominance is "readily met" in certain consumer cases. *See id.* at 625. The touchstone for predominance analysis is efficiency. It is not necessary that all questions of law or fact be common; only some questions must be common, and they must predominate over individual questions. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("The predominance inquiry asks whether common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.") (citation omitted). "Rather, the question is whether there is 'reason to think

12

that [individualized] questions will overwhelm common ones and render class certification inappropriate.'" *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2013)).

Here, the central, and potentially only, legal issue is whether the dialing system at issue in this case qualifies as an ATDS. This is sufficient to satisfy the predominance requirement, as there are few, if any, individualized questions to be determined.

### E. A class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the class.

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Because Plaintiff seeks to certify a class in the context of a settlement, this Court need not consider any possible management-related problems. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." (citing Fed. R. Civ. P. 23(b)(3)(D)).

In any event, no individual member of the Class has an interest in controlling the prosecution of this action because Plaintiff's claims and the claims of the Class members are the same, and they are all relatively modest. Under these circumstances, alternatives to a class

13

action are either no recourse for thousands of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice.

### III. The parties' notice plan satisfies the requirements of Rule 23 and due process requirements.

Under Rule 23(e), a court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). As the *Arthur* Court explained:

> For a binding settlement, the Court must direct the Plaintiffs to give notice in a reasonable manner to all class members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e). Class members are entitled to know the terms of the agreement. Class members are entitled to a notice which clearly and concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Class members are also entitled to notice of the fees and costs being requested by class counsel and given an opportunity to object. Rule 23(h).

*Arthur,* 2012 U.S. Dist. LEXIS 97933, at * 24.

Here, the Settlement provided a robust notice program involving direct postcard mail notice to Class members and a dedicated settlement website administered by a well-regarded third-party claims administrator—JND—which has significant experience in the administration of consumer class actions, including TCPA cases. Keough Dec., ¶¶ 7-9 (mailed notice); ¶ 10 (supplemental email notice); ¶¶ 11-13 (website notice);[4] *see also* ¶¶ 14-15 (toll-free information

---

[4] *See, e.g. In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (finding that notice via website publication alone may be sufficient notice for Rule 23(c)(2)(B) purposes.

14

line to address class member questions).

The notice plan complied with Rule 23 and due process because it informed class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process to object to, or to be excluded from, the class, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Plaintiff's request for an award of attorneys' fees and expenses; (6) how to make inquiries and obtain additional information; and (7) how to participate in the Final Approval Hearing, if they so chose. Fed. R. Civ. P. 23(c)(2)(B).

## CONCLUSION

Plaintiff respectfully requests that the Court grant final approval to the Settlement.

Dated: August 10, 2021              By:     /s/ Peter N. Wasylyk

Peter N. Wasylyk (R.I. Bar # 3351)
LAW OFFICES OF PETER N. WASYLYK
1307 Chalkstone Avenue
Providence, Rhode Island 02908
Telephone: 401-831-7730
Facsimile: 401-861-6064
Email: pnwlaw@aol.com

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin*
Email: jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
        Daniel M. Hutchinson*
        Email: dhutchinson@lchb.com
        Evan J. Ballan*
        Email: eballan@lchb.com
        275 Battery Street, 29th Floor
        San Francisco, California 94111-3339
        Telephone: (415) 956-1000
        Facsimile: (415) 956-1008

        MEYER WILSON CO., LPA
        Matthew R. Wilson*
        Email: mwilson@meyerwilson.com
        Michael J. Boyle, Jr.*
        Email: mboyle@meyerwilson.com
        1320 Dublin Road, Ste. 100
        Columbus, Ohio 43215
        Telephone: (614) 224-6000
        Facsimile: (614) 224-6066

        *Admitted Pro Hac Vice

        *Attorneys for Plaintiff and the Proposed Class*

## Certificate of Service

I hereby certify that on August 10, 2021 I served the foregoing to all counsel in this matter via ECF notification.

        /s/ *Peter N. Wasylyk*

        One of the Attorneys for Plaintiff and the Class